## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN RICHARD JAE, | ) | |
| | ) | Civil Action No. 12 – 1332 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Chief Magistrate Judge Lisa Pupo Lenihan |
| | ) | |
| WARDEN WILLIAM STICKMAN, | ) | |
| DEPUTY WARDEN B. EMERICK, | ) | ECF No. 17 |
| CAPTAIN COLEMAN, THE PRISON | ) | |
| CASHIERS, OFFICER GAMBRILL, | ) | |
| and 5F RELIEF OFFICERS, | ) | |
| | | |
| Defendants. | | |

## MEMORANDUM OPINION AND ORDER

John Richard Jae (hereinafter referred to as "Plaintiff") initiated this case in the Court of Common Pleas of Allegheny County in August, 2012, and, shortly thereafter, it was removed to this Court by Defendant Darlene, who has since been voluntarily dismissed from this action. In his Complaint, Plaintiff alleges that the conditions of his confinement at the Allegheny County Jail (hereinafter referred to as "ACJ") violated his rights under the United States and Pennsylvania Constitutions and the Title II of the Americans with Disabilities Act. Defendants, all employees of the ACJ, have moved to dismiss Plaintiff's Complaint for failure to state a claim upon which relief may be granted. For the following reasons, their motion will be granted in part and granted without prejudice in part to Plaintiff filing an amended complaint with respect to two of his claims.

1

I.      **Standard of Review**

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of a complaint.  Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993). A complaint must be dismissed for failure to state a claim if it does not allege "enough facts to state a claim to relief that is plausible on its face."  Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 556 (2007) (rejecting the traditional 12(b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)); Ashcroft v. Iqbal, 129 S. Ct.1937, 1949 (May 18, 2009) (citing Twombly, 550 U.S. at 555-57).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 556).  The Supreme Court further explained:

> The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

Id. (citing Twombly, 550 U.S. at 556-57).

In Fowler v. UPMC Shadyside, 578 F.3d 203 (3d Cir. Aug. 18, 2009), the United States Court of Appeals for the Third Circuit discussed its decision in Phillips v. County of Allegheny, 515 F.3d 224, 232-33 (3d Cir. 2008) (construing Twombly in a civil rights context), and described how the Rule 12(b)(6) standard had changed in light of Twombly and Iqbal as follows:

> After Iqbal, it is clear that conclusory or "bare-bones" allegations will no longer survive a motion to dismiss: "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Iqbal, 129 S. Ct. at 1949.  To prevent dismissal, all civil complaints must now set out "sufficient factual matter" to show that the claim is facially plausible.  This then "allows the court to draw the reasonable inference that the

> defendant is liable for the misconduct alleged." Id. at 1948.  The
> Supreme Court's ruling in Iqbal emphasizes that a plaintiff must
> show that the allegations of his or her complaints are plausible.
> *See* Id. at 1949-50; *see also* Twombly, 505 U.S. at 555, & n. 3.

Fowler, 578 F.3d at 210.

Thereafter, in light of Iqbal, the United States Court of Appeals for the Third Circuit in

Fowler v. UPMC Shadyside, 578 F.3d 203 (3d Cir. 2009), set forth the following two-prong test

to be applied by the district courts in deciding motions to dismiss for failure to state a claim:

> First, the factual and legal elements of a claim should be separated.
> The District Court must accept all of the complaint's well-pleaded
> facts as true, but may disregard any legal conclusions.  [Iqbal, 129
> S. Ct. at 1949].   Second, a District Court must then determine
> whether the facts alleged in the complaint are sufficient to show
> that the plaintiff has a "plausible claim for relief." Id. at 1950.  In
> other words, a complaint must do more than allege the plaintiff's
> entitlement to relief.    A complaint has to "show" such an
> entitlement with its facts.  *See* Phillips, 515 F.3d at 234-35.  As the
> Supreme Court instructed in Iqbal, "[w]here the well-pleaded facts
> do not permit the court to infer more than the mere possibility of
> misconduct, the complaint has alleged-but it has not 'show[n]'-
> 'that the pleader is entitled to relief.'" Iqbal, 129 S. Ct. at 1949.
> This "plausibility" determination will be "a context-specific task
> that requires the reviewing court to draw on its judicial experience
> and common sense." Id.

Fowler, 578 F.3d at 210-11.

In addition to the complaint, courts may consider matters of public record and other

matters of which a court may take judicial notice, court orders, and exhibits attached to the

complaint when adjudicating a motion to dismiss under Rule 12(b)(6).   Oshiver v. Levin,

Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994) (citing 5A Wright and

Miller, *Federal Practice and Procedure: Civil 2d,* § 1357; Chester County Intermediate Unit v.

Pennsylvania Blue Shield, 896 F.2d 808, 812 (3d Cir. 1990)).   A court may also consider

indisputably authentic documents.  Spruill v. Gillis, 372 F.3d 218, 223 (3d Cir. 2004); Pension

Ben. Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993); Golden v. Cook, 293 F. Supp.2d 546, 551 (W.D. Pa. 2003) ("[C]ourts are permitted to consider matters of which they may take judicial notice, including records and reports of administrative bodies, and publically available records and transcripts from judicial proceedings 'in related or underlying cases which have a direct relation to the matters at issue.'") (citations omitted).

Finally, a court must employ less stringent standards when considering *pro se* pleadings than when judging the work product of an attorney.  Haines v. Kerner, 404 U.S. 519, 520 (1972).  When presented with a *pro se* complaint, the court should construe the complaint liberally and draw fair inferences from what is not alleged as well as from what is alleged.  Dluhos v. Strasberg, 321 F.3d 365, 369 (3d Cir. 2003).  In a section 1983 action, the court must "apply the applicable law, irrespective of whether the *pro se* litigant has mentioned it by name."  Higgins v. Beyer, 293 F.3d 683, 688 (3d Cir. 2002) (quoting Holley v. Dep't of Veteran Affairs, 165 F.3d 244, 247-48 (3d Cir. 1999)).  *See also* Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996) ("Since this is a § 1983 action, the [*pro se*] plaintiffs are entitled to relief if their complaint sufficiently alleges deprivation of any right secured by the Constitution.") (quoting Higgins, 293 F.3d at 688).  Notwithstanding this liberality, *pro se* litigants are not relieved of their obligation to allege sufficient facts to support a cognizable legal claim.  *See*, *e.g.*, Taylor v. Books A Million, Inc., 296 F.3d 376, 378 (5th Cir. 2002); Riddle v. Mondragon, 83 F.3d 1197, 2102 (10th Cir. 1996).

## II.   Discussion

### A.  Failure to Follow Prison Policies and Procedures

The overarching claim in the Complaint is that Defendants failed to abide by their own policies and procedures as set forth in the ACJ Inmate Handbook; most notably in regards to inmate subscriptions and publications and the inmate grievance procedure.  Plaintiff claims that

this alleged misconduct violated his rights under the United States and Pennsylvania Constitutions.

State agency guidelines do not, in and of themselves, create a right, and do not have the force of law. *See* Mercy Catholic Med. Ctr. v. Thompson, 380 F.3d 142, 154 (3d Cir. 2004); *see also* Atwell v. Lavan, 557 F. Supp. 2d 532, 556 n.24 (M.D. Pa. Dec. 21, 2007) (a prison policy manual does not have the force of law and does not rise to the level of a regulation). As such, a violation of internal policy does not automatically rise to the level of a Constitutional violation. Whitcraft v. Township of Cherry Hill, 974 F. Supp. 392, 398 (D. N.J. 1996) (citing Daniels v. Williams, 474 U.S. 327, 332-33 (1986); Edwards v. Baer, 863 F.2d 606, 608 (8th Cir. 1988); Jones v. Chieffo, 833 F. Supp. 498, 505-06 (E.D. Pa. 1993)). *See also* Hovater v. Robinson, 1 F.3d 1063, 1068 n.4 (10th Cir. 1993) ("[A] failure to adhere to administrative regulations does not equate to a constitutional violation."); Walker v. Zenk, No. 01-1644, 2007 U.S. Dist. LEXIS 96351, at *29-30 n.19 (M.D. Pa. Nov. 15, 2007) (*adopted in part and rejected in part by* 2008 U.S. Dist. LEXIS 9086 (M.D. Pa. Feb. 7, 2008) ("[A]lleged violations of prison policies do[] not rise to the level of a Constitutional claim."); Estrella v. Hogsten, No. 06-1340, 2007 U.S. Dist. LEXIS 51208, at *21 (M.D. Pa. July 16, 2007) (holding that mere failure of prison officials to follow their own regulations alone is not a constitutional violation). In this case, the ACJ Inmate Handbook did not create any enforceable rights such that the violation of a written policy or procedure would give rise to a federal or state constitutional violation in and of itself. As such, Plaintiff is unable to state a claim for relief that may be granted based on any such failure on the part of the defendants to follow their own internal procedure.

Moreover, to the extent Plaintiff claims a violation of any right due to Defendant Coleman's failure to timely respond to his grievances dated January 25 and 26, 2012, he is

unable to state a claim for relief because inmates do not have a constitutional right to a prison grievance system.  *See* Jones v. North Carolina Prisoners' Labor Union, Inc., 433 U.S. 119, 137-38 (1977); Speight v. Sims, 283 F. App'x 880, 881 (3d Cir. 2008) (citing Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001), stating that "the existence of a prison grievance procedure confers no liberty interest on a prisoner.")  Moreover, personal knowledge of constitutional violations cannot be established solely as a result of addressing grievances.  *See* Dellarciprete, 845 F.2d at 1208.  Additionally, the denial of a grievance or mere concurrence in an administrative appeal process is insufficient to establish personal involvement necessary for liability in a Section 1983 action.  *See* Simonton v. Tennis, 437 F. App'x 60, 62 (3d Cir. 2011) ("[A] prison official's secondary review of an inmate's grievance or appeal is not sufficient to demonstrate the personal involvement required to establish the deprivation of a constitutional right."); Brooks v. Beard, 167 F. App'x 923, 925 (3d Cir. 2006) (holding that a state prisoner's allegation that prison officials and administrators responded inappropriately, or failed to respond to a prison grievance, did not establish that the officials and administrators were involved in the underlying allegedly unconstitutional conduct); Manns v. Bledsoe, No. 10-1564, 2011 U.S. Dist. LEXIS 102268, 2011 WL 4048781, at *4 (M.D. Pa. Sept. 12, 2011); Mincy v. DeParlos, No. 08-0507, 2011 U.S. Dist. LEXIS 31168, 2011 WL 1120295, at *7 (M.D. Pa. Mar. 24, 2011); Wilkerson v. Schafer, No. 09-2539, 2011 U.S. Dist. LEXIS 25916, 2011 WL 900994, at *7 (M.D. Pa. Mar. 14, 2011) (allegations that defendants "should be held liable for due process violations because they should have become aware of them through their review of his misconduct appeals is insufficient to establish their personal involvement in the underlying unconstitutional conduct"); Logan v. Lockett, No. 07-1759, 2009 U.S. Dist. LEXIS 24328, 2009 WL 799749, at *8 (W.D. Pa. Mar. 25, 2009); Croom v. Wagner, No. 06-1431, 2006 U.S. Dist. LEXIS 64915, 2006 WL 2619794, at

*4 (E.D. Pa. Sept. 11, 2006) (holding that neither the filing of a grievance nor an appeal of a grievance is sufficient to impose knowledge of any wrongdoing); Ramos v. Pa. Dept. of Corr., No. 06-1444, 2006 U.S. Dist. LEXIS 51582, 2006 WL 2129148, at *2 (M.D. Pa. July 27, 2006) (holding that the review and denial of the grievances and subsequent administrative appeal does not establish personal involvement).   Therefore, Plaintiff's allegations regarding any of the defendants' conduct in connection with the grievance system do not state a claim for relief. These claims will be dismissed with prejudice.

### B.  Denial of Access to the Courts

Next, Plaintiff alleges that he was denied his right to access the courts because (1) the ACJ does not have a library, (2) he was not provided with the proper size paper for legal documents, and (3) he was unable to make copies of court documents and other legal information due to his indigent status.

Since 1977, the United States Supreme Court has recognized that inmates have a constitutional right of access to the courts.   Bounds v. Smith, 430 U.S. 817 (1977).   As the Supreme Court initially observed, this right of access to the courts is satisfied when corrections officials facilitate "meaningful" access for those incarcerated, either through legal materials or the assistance of those trained in the law.   Id. at 827 ("[T]he fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing or meaning legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law.").   Two decades later, in 1996, the Supreme Court provided further definition and guidance regarding the scope and nature of this right of access to the courts in Lewis v. Casey, 518 U.S. 343 (1996).   In Lewis, the Court eschewed efforts to define this right

in abstract, or theoretical terms, but rather cautioned courts to focus on concrete outcomes when assessing such claims.  As the court observed:

> Because Bounds did not create an abstract, freestanding right to a law library or legal assistance, an inmate cannot establish relevant actual injury simply by establishing that his prison's . . . legal assistance program is subpar in some theoretical sense . . . .  Insofar as the right vindicated by Bounds is concerned, "meaningful access to the courts is the touchstone," id., at 823, 97 S.Ct., at 1495 (internal quotation marks omitted), and the inmate therefore must go one step further and demonstrate that the alleged shortcomings in the . . . legal assistance program hindered his efforts to pursue a legal claim.  Although Bounds itself made no mention of an actual-injury requirement, it can hardly be thought to have eliminated that constitutional prerequisite.  And actual injury is apparent on the face of almost all the opinions in the 35-year line of access-to-courts cases on which Bounds relied, see id., at 821-825, 97 S.Ct., at 1494-1497.  Moreover, the assumption of an actual-injury requirement seems to us implicit in the opinion's statement that "we encourage local experimentation" in various methods of assuring access to the courts.  Id., at 832, 97 S.Ct., at 1500.

Lewis, 518 U.S. at 351-52.

Thus, following Lewis, courts have consistently recognized two guiding principles which animate access-to-court claims by prisoners.  First, such claims require some proof of an actual, concrete injury, in the form of direct prejudice to the plaintiff in the pursuit of some legal claim.  See, e.g., Oliver v. Fauver, 118 F.3d 175 (3d Cir. 1997); Demeter v .Buskirk, No. 03-1005, 2003 U.S. Dist. LEXIS 18133, 2003 WL 22139780 (E.D. Pa. Aug. 27, 2003); Castro v. Chesney, No. 97-4983, 1998 U.S. Dist. LEXIS 4034, 1998 WL 150961 (E.D. Pa. March 31, 1998).  Second, consistent with the Supreme Court's express view that "'we encourage local experimentation' in various methods of assuring access to the courts," Lewis, 518 U.S. at 352, courts have long recognized that public officials have significant discretion in the field and can provide meaningful access to the courts through a wide variety of means.  See, e.g., Peterkin v. Jeffes, 855 F.2d 1021, 1042 (3d Cir. 1988); Hester v. Morgan, No. 10-309, 2010 U.S. Dist. LEXIS 104385, 2010 WL 3907770, *2 (D. Del. Sept. 29, 2010); Tinsley v. Del Rosso, No. 08-1251,

2008 U.S. Dist. LEXIS 43259, 2008 WL 2236598 (D. N.J. May 30, 2008); <u>Tormasi v. Hayman</u>, No. 07-5683, 2008 U.S. Dist. LEXIS 37554, 2008 WL 1995125 (D. N.J. May 6, 2008); <u>Annis v. Fayette County Jail</u>, No. 07-1628, 2008 U.S. Dist. LEXIS 26721, 2008 WL 763735 (W.D. Pa. March 20, 2008); <u>Hunter v. Schouppe</u>, No. 06-1023, 2007 U.S. Dist. LEXIS 1887, 2007 WL 120030 (W.D. Pa. Jan. 10, 2007); <u>Cook v. Boyd</u>, 881 F. Supp. 171, 176 (E.D. Pa.1995).

Here, Plaintiff has failed to allege that he suffered an actual injury, a constitutional prerequisite to stating a viable access to courts claim pursuant to <u>Lewis</u>.  In this regard, he has failed to show how the lack of a library and alleged denial of legal sized paper and photocopying somehow resulted in the loss of a nonfrivolous claim, or the pursuit of *any* claim for that matter.  Moreover, to the extent Plaintiff suggests that his right to access the courts was infringed because he was unable to obtain certain legal supplies and make copies due to his indigent status, this alone is insufficient to state a claim.  The State does not have an obligation to provide unlimited free legal supplies.  *See* <u>Twyman v. Crisp</u>, 584 F.2d 352, 360 (10th Cir. 1978); <u>Bach v. Coughlin</u>, 508 F.2d 303, 307-08 (7th Cir. 1974).  Instead, the State must only provide the basic supplies, which ensures that the prisoner's access to the court is "meaningful."  *See* <u>Phillips v. Hurst</u>, 588 F.3d 652, 656-57 (9th Cir. 2009).  Reasonable regulations are necessary to balance the rights of prisoners with budgetary considerations and a plaintiff must show how the alleged inadequate legal supplies, such as paper, pens, and photocopying, resulted in an "actual injury".  This, Plaintiff has not done.  As such, he has failed to state an access to courts claim.  However, the Court will allow Plaintiff an opportunity to amend his Complaint in order to state such a claim because it is unclear whether granting him leave to do so would necessarily by futile.

### C.  Inability to Hear the Pod Television

Plaintiff alleges that he was discriminated against because of his hearing impairment. Specifically, he avers that he could not hear the pod TV and that defendants refused to turn the volume up to a level where he could hear it.  Therefore, he states that he was unable to hear the pod TV that all other inmates were able to enjoy and this was in violation of his rights to equal protection under the law and Title II of the Americans with Disabilities Act.

### 1.  Equal Protection

The Equal Protection Clause of the Fourteenth Amendment exists to protect similarly situated individuals from disparate treatment under the law or by some other state action. Artway v. Att'y Gen. of New Jersey, 81 F.3d 1235, 1267 (3d Cir. 1996).  The Equal Protection Clause "is not a command that all persons be treated alike but, rather, 'a direction that all persons similarly situated should be treated alike.'"  Id. (quoting City of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 439 (1985)).  "Treatment of dissimilarly situated persons in a dissimilar manner by the government does not violate the Equal Protection Clause."  Klinger v. Dep't of Corrs., 31 F.3d 727, 731 (8th Cir. 1994).  Additionally, an equal protection violation in a prison setting requires proof that an inmate "was treated differently than others similarly situated as a result of intentional or purposeful discrimination . . . [The inmate] also must show that the disparity in treatment cannot survive the appropriate level of scrutiny, which, in a prison setting, means that he must demonstrate that his treatment was not reasonably related to [any] legitimate penological interests."  Phillips v. Girdich, 408 F.3d 124, 129 (2d Cir. 2005) (internal citation and quotation marks omitted); see also Wilson v. Schillinger, 761 F.2d 921, 929 (3d Cir. 1985).

First, it is well-settled that an inmate like Plaintiff has no constitutional right to watch TV.  Elliott v. Brooks, 188 F.3d 518 (10th Cir. 1999) (no constitutional right to watch television

in prison); <u>Murphy v. Walker</u>, 51 F.3d 714, 718, n.8 (7th Cir. 1995) (denial of television does not amount to a constitutional violation); <u>Montana v. Commissioners Court</u>, 659 F.2d 19, 23 (5th Cir. 1981).  *See also* <u>Lester v. Clymer</u>, 1989 U.S. Dist. LEXIS 6829, 1989 WL 66621, at *2 (E.D. Pa. June 19, 1989); <u>Manley v. Fordice</u>, 945 F. Supp. 132, 136-37 (S.D. Miss. 1996) ("There is simply no right to television while incarcerated . . . .  Such items are luxuries, and any allowance of them in prisons is merely an altruistic act on the part of the Department of Corrections.").   Notwithstanding, Plaintiff has not alleged that he was intentionally treated differently than other inmates similarly situated, *i.e.*, inmates with hearing impairments.  Instead, Plaintiff alleges that he was treated differently than those inmates who did not have hearing impairments and were in fact able to hear the television.   These inmates are not valid comparators for Plaintiff's equal protection claim.  Accordingly, he has failed to state a claim for relief that may be granted; and, as it is clear that granting him leave to amend would be futile, this claim will be dismissed with prejudice.

   *2.   The Americans with Disabilities Act*

   Before the enactment of the Americans with Disabilities Act ("ADA"), Congress recognized that "current laws were 'inadequate' to combat the 'pervasive problems of discrimination that people with disabilities are facing.'"  <u>Helen L. v. DiDario</u>, 46 F.3d 325, 331 (3d Cir. 1995) (quoting S. Rep. No. 116, 101st Cong., 1st Sess. 18 (1989); H.R. Rep. No. 485 (II), 101st Cong., 2d Sess. 47 (1990)).  Congress found that "discrimination against individuals with disabilities persists in such critical areas as . . . access to public services."  42 U.S.C. § 12101(a)(4).  Congress also found that "individuals with disabilities continually encounter various forms of discrimination including . . . communication barriers."  <u>Id</u>. § 12101(a)(5).

As a result of this discrimination, Congress enacted the ADA. Through the ADA, Congress sought "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." Id. § 12101(b)(1).

Title II of the ADA prohibits discrimination against the disabled in public services. *See* 42 U.S.C. § 12132; Civic Ass'n of the Deaf v. Giuliani, 915 F. Supp. 622, 634 (S.D. N.Y. 1996). Title II provides that:

> no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132. Thus, to show a violation of Title II, a plaintiff must prove that (1) he is a "qualified individual with a disability;" (2) he is being excluded from participation in or being denied the benefits of some "services, programs, or activities," by reason of his disability;[1] and (3) the entity which provides the service, program or activity is a public entity. *See*, *e.g.*, Layton v. Elder, 143 F.3d 469, 472 (8th Cir. 1998); Bowers v. National Collegiate Athletic Ass'n, Act, Inc., 9 F. Supp. 2d 460, 475 (D. N.J. 1998); Adelman v. Dunmire, No. Civ-A. 95-4039, 1997

---

[1] The ADA, as a remedial statute, must be broadly construed to effectuate its purpose. *See* Helen L., 46 F.3d at 331-33; Niece v. Fitzner, 922 F. Supp. 1208, 1217 (E.D. Mich. 1996); Lincoln CERPAC v. Health and Hosps. Corp., 920 F. Supp. 488, 497 (S.D. N.Y. 1996); Civic Ass'n of the Deaf, 915 F. Supp. at 634. Consistent with this construction, "most courts have given a broad reading to the term 'service.'" Niece, 922 F. Supp. at 1217. *See* Clarkson v. Coughlin, 898 F. Supp. 1019, 1045-47 (S.D. N.Y. 1995) (finding that, pursuant to the ADA, a prison must provide hearing-impaired prisoners with adequate communication devices for telephones and televisions).

In addition to considering this broad construction, the Court must also give considerable weight to the Department of Justice's ("DOJ") regulations. Title II directs the DOJ to promulgate regulations. Substantial weight and considerable deference should be accorded to the DOJ's construction of the statute. Blum, 457 U.S. at 141; Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 844 (1984); Helen L., 46 F.3d at 331-32. Courts should give the DOJ's regulations controlling weight, unless the regulations are "arbitrary, capricious or manifestly contrary to the statute." Chevron, U.S.A., Inc., 467 U.S. at 844; Helen L., 46 F.3d at 332; Blum v. Bacon, 457 U.S. 132, 141 (1982). These regulations shed light on the meaning and scope of the term "service." The regulations state that the ADA's coverage extends to "all services . . . made available by public entities." 28 C.F.R. § 35.102(a) (1999). According to the Third Circuit, "this broad language is intended to 'apply to *anything* a public entity does.'" Yeskey v. Pennsylvania Dep't of Corrections, 118 F.3d 168, 171 (3d Cir. 1997) (quoting 28 C.F.R. pt. 35, app. A. subpt. A (emphasis added) (brackets in original)).

U.S. Dist. LEXIS 3796, 1997 WL 164240 (E.D. Pa. Mar. 27, 1997), *aff'd*, 149 F.3d 1163 (3d Cir. 1998); Civic Ass'n of the Deaf, 915 F. Supp. at 634; Concerned Parents to Save Dreher Park Ctr. v. West Palm Beach, 846 F. Supp. 986, 989-90 (S.D. Fla. 1994).

As an initial matter, the individual defendants, sued in their individual capacities, are not liable under Title II of the ADA because they are not "public entities" within the meaning of the ADA. *See* Emerson v. Thiel College, 296 F.3d 184, 189 (3d Cir. 2002). Accordingly, Plaintiff is unable to state a claim against the defendants in their individual capacities under this act.

Plaintiff states that he is also suing the defendants in their official capacities. "[A] suit against a state official in his or her official capacity is not a suit against the official but rather a suit against the official's office." Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989) (internal citations omitted). In this case, defendants are employees of Allegheny County. Defendants argue that they are entitled to Eleventh Amendment immunity to the extent they are being sued in their official capacities. Eleventh Amendment immunity, however, does not extend to counties. Chisolm v. McManimon, 275 F.3d 315, 322 (3d Cir. 2001) (citing Lincoln County v. Luning, 133 U.S. 529 (1890)). Nevertheless, Plaintiff's ADA claim against the various defendants in their official capacities, is also dismissed for failure to state a claim.

Here, Plaintiff has not pled sufficiently his *prima facie* case. By merely asserting that he is hearing impaired, Plaintiff's assertion of disability is conclusory and is insufficient for the Court to determine whether he has a plausible claim. *See* Wahl v. Wecht, No. 10-0010, 2010 U.S. Dist. LEXIS 99363, at *24-25 (W.D. Pa. Sept. 21, 2010). Rather, as noted above, Plaintiff must allege that he is a "qualified individual" with a disability within the definition of the ADA. In that connection, Plaintiff's allegations regarding his disability must include "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. §

13

12102(1); 29 U.S.C. § 705(20)(B); *see* <u>Williams v. Phila. Hous. Auth. Police Dep't</u>, 380 F.3d

751, 761 (3d Cir. 2004); <u>Weidow v. Scranton Sch. Dist.</u>, 2009 U.S. Dist. LEXIS 73622, at *14

(M.D. Pa. Aug. 19, 2009).  Plaintiff simply states that he is hearing impaired; he does not allege

any facts regarding the extent of his impairment and how his impairment limits his life activities.

Without those allegations, Plaintiff has not met his pleading requirement under the first element

of his ADA claim.  Moreover, Plaintiff does not allege that he was excluded from watching

television by any and every means available.  He only states that the defendants would not turn

the volume up on the television but he does not allege that they refused to turn on the closed

captioning.  In fact, it is likely that turning up the volume would not have been a way to

reasonably accommodate Plaintiff's hearing impairment because then it would be too loud for

other listeners to enjoy.  Simply put, the Complaint does not contain sufficient factual allegations

to show there is a plausible ADA claim.  As such, this claim will be dismissed, albeit without

prejudice, and Plaintiff will be afforded an opportunity to amend his Complaint with respect to

this claim.

### D.  ACJ Meals

Plaintiff alleges that inmates were not provided with meals that met the recommended

daily caloric intake and nutritional guidelines of the United States Department of Agriculture.

Plaintiff's claims relating to the meals he received at the ACJ are asserted against Defendant

Darlene who Plaintiff has since voluntarily dismissed from this action.  Therefore, to the extent

defendants seek dismissal of these claims, their motion is moot.

### E.  Amendment of the Complaint

The Court must allow amendment by the plaintiff in a civil rights case brought under §

1983 before dismissing pursuant to Federal Rule of Civil Procedure 12(b)(6), irrespective of

whether it is requested, unless doing so would be "inequitable or futile."  Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 251 (3d Cir. 2007); *see also* Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004) (asserting that where a complaint is vulnerable to dismissal pursuant to 12(b)(6), the district court must offer the opportunity to amend unless it would be inequitable or futile).  While Plaintiff has failed to state a claim against the defendants in either their individual or official capacities, it is unclear whether granting him leave to file an amended complaint with respect to his access to courts and ADA claims would necessarily be futile.  Therefore, Plaintiff will be afforded an opportunity to amend his Complaint but only with respect to these two claims.  Any new claim included within his amended complaint will be dismissed.  An appropriate order follows.

**AND NOW**, this 19th day of August, 2013;

**IT IS HEREBY ORDERED** that the Motion to Dismiss (ECF No. 17) is **GRANTED in part and GRANTED without prejudice** in part.

**IT IS FURTHER ORDERED** that the claims in the Complaint are dismissed with prejudice with the exception of Plaintiff's access to courts and ADA claims which are dismissed without prejudice.

**AND IF IS FURTHER ORDERED** that Plaintiff shall have until September 16, 2013, to file an amended complaint only with respect to his access to courts and ADA claims.  If he fails to do so within the time allowed, then the Court will grant Defendants' Motion to Dismiss with respect to these claims and dismiss them with prejudice for his failure to state a claim upon which relief may be granted.

/s/ Lisa Pupo Lenihan
Lisa Pupo Lenihan

15

Chief United States Magistrate Judge

cc:  John Richard Jae
     KQ-2569
     S.C.I. Forest
     Special Needs Unit
     P.O. Box 945
     Marienville, PA  16239-0945
     *Via U.S. Postal Mail*

     Counsel of Record
     *Via ECF Electronic Mail*