IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN RICHARD JAE, | Civil Action No. 12–1332 |
| Plaintiff, | |
| v. | Chief Magistrate Judge Lisa Pupo Lenihan |
| WARDEN WILLIAM STICKMAN, DEPUTY WARDEN B. EMERICK, CAPTAIN COLEMAN, THE PRISON CASHIERS, OFFICER GAMBRILL, 5F RELIEF OFFICERS, and ALLEGHENY COUNTY | RE: ECF No. 57 |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

**I. Factual and Procedural History**

John Richard Jae ("Plaintiff") initiated this case in the Court of Common Pleas of Allegheny County in August, 2012, and, it was removed to this Court by Defendant Darlene (who has since been voluntarily dismissed).[1] In his first of what would eventually reach four (4)

---

[1] At the time that this case was removed from state court, Plaintiff had accumulated at least "three strikes" within the meaning of 28 U.S.C. § 1915(g), and, therefore, was unentitled to proceed *in forma pauperis*. Specifically, in <u>Jae v. White</u>, No. 95-2019 (W.D. Pa.), Plaintiff's action was dismissed as legally frivolous by Order dated January 4, 1996. In <u>Jae v. Grainey</u>, No. 96-637 (W.D. Pa.), Plaintiff's action was dismissed for failure to state a claim by Order dated April 8, 1997. In <u>Jae v. Collins</u>, No. 95-1442 (W.D. Pa.), Plaintiff's action was dismissed as legally frivolous by Order dated September 28, 1995. In <u>Jae v. White</u>, No. 95-770 (W.D. Pa.), Plaintiff's action was dismissed for failure to state a claim by Order dated December 8, 1995.

1

Amended Complaints, this *pro se* Plaintiff filed his claims pursuant to 42 U.S.C. Section 1983 and alleged that the conditions of his confinement at the Allegheny County Jail (the "ACJ") violated his rights under the United States and Pennsylvania Constitutions and Title II of the Americans with Disabilities Act. More specifically, Plaintiff complained that Defendants failed to follow their own ACJ Inmate Handbook with regard to his rights to printed materials and grievance procedures; that his access to courts was denied by the ACJ's failure to provide a library or adequate photocopying materials/equipment; that his rights of equal protection and his rights under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.,* were violated by Defendants' refusal to increase the volume of his prison pod TV to accommodate his hearing impairment; and that he was not provided with meals that met the recommended daily caloric intake and nutritional guidelines.

In January, 2013, Defendants, all employees of the ACJ, moved to dismiss Plaintiff's Complaint for failure to state a claim (ECF No. 17). The Court granted that Motion, but without prejudice as to Plaintiff's claims (1) of denial of right to access the courts and (2) under the ADA. Plaintiff's claims remained against Defendants in their official capacities. See Memorandum Opinion and Order (ECF No. 41). Plaintiff has filed a Second, Third and Fourth Amended Complaint. The latter contain only an ADA claim. And Defendants have filed another Motion to Dismiss (ECF No. 57).

The Fourth Amended Complaint adds as a Defendant and expressly seeks damages from Allegheny County, and Allegheny County has joined in the Defendants' Motion to Dismiss. See

---

However, Defendant Darlene paid the filing fee upon removal to this Court; accordingly, Plaintiff is not proceeding *in forma pauperis*, and therefore this case is not subject to dismissal by application of the "three strikes" provisions of Section 1915(g). See this Court's text Order of October 16, 2013.

discussion, *infra*; see also Joinder (ECF No. 75), Defendants' Supplemental Brief in Support of Motion to Dismiss (ECF No. 76)[2], and this Court's text Order of August 18, 2014.

Plaintiff has made no further amendment with respect to his claim of denial of a right of access to the courts, no factual allegations of actual injury (*i.e.*, an impairment to his pursuit of a legal claim), and indeed no mention of that claim in his latest Complaints (despite this Court's express October 4, 2013 guidance that "an Amended Complaint entirely replaces a previously filed Complaint"), Rather, he has – as Defendants assert - abandoned this claim in subsequent amendments, and such claim therefore will be formally dismissed. See Defendants' Brief in Support of Motion to Dismiss at 2. Plaintiff has also failed to make any factual allegations against the Prison Cashiers (who were presumably named, together with the subsequently voluntarily dismissed Defendant "Darlene", in relation to his dismissed meal complaints) and, accordingly, these Defendants will be dismissed. See Defendants' Brief in Support of Motion to Dismiss at 6.

As Plaintiff has, however, subsequently amended his Complaints to include factual allegations which meet, in light of his *pro se* status and the directions of the Third Circuit with regard to this Court's consideration of *pro se* prisoner civil rights actions, the requirements of a *prima facie* claim under the ADA, the Motion to Dismiss must be denied as to said claim and related Defendants. See Fourth Amended Complaint (ECF No. 72).[3] The Court observes the

---

[2] On September 4, 2014 the Court received a request for an enlargement of time from Plaintiff to file a Reply Brief in Opposition to Defendants' Supplemental Brief in Support of their Motion to Dismiss. This request was granted via text Order dated 9/4/14 and Plaintiff was given an extension until September 25, 2014. No Reply Brief has been received.

[3] Plaintiff's request for punitive damages against Allegheny County will, however, be dismissed, as Defendants correctly maintain that such damages are not recoverable under Title II of the ADA. See Defendants' Supplemental Brief at 5 (citing Doe v. County of Centre, PA, 242 F.3d 437 (3d Cir. 2001)).

significant difference in the standard by which Plaintiff's claim would be reviewed on a Motion for Summary Judgment.

## II. **Standard of Review**

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of a complaint. Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993). A complaint must be dismissed for failure to state a claim if it does not allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 556 (2007) (rejecting the traditional 12(b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)); Ashcroft v. Iqbal, 129 S. Ct.1937, 1949 (May 18, 2009) (citing Twombly, 550 U.S. at 555-57). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 556). The Supreme Court further explained:

> The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

Id. (citing Twombly, 550 U.S. at 556-57).

In Fowler v. UPMC Shadyside, 578 F.3d 203 (3d Cir. Aug. 18, 2009), the United States Court of Appeals for the Third Circuit described how the Rule 12(b)(6) standard had changed in light of Twombly and Iqbal as follows:

> After Iqbal, it is clear that conclusory or "bare-bones" allegations will no longer survive a motion to dismiss: "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 129 S. Ct. at 1949. To prevent dismissal, all civil complaints must now set out "sufficient factual

> matter" to show that the claim is facially plausible. This then "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 1948. The Supreme Court's ruling in Iqbal emphasizes that a plaintiff must show that the allegations of his or her complaints are plausible. *See* id. at 1949-50; *see also* Twombly, 505 U.S. at 555, & n. 3.

Fowler, 578 F.3d at 210.

The Court of Appeals for the Third Circuit set forth the following two-prong test to be applied by the district courts in deciding motions to dismiss for failure to state a claim:

> First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. [Iqbal, 129 S. Ct. at 1949]. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." Id. at 1950. In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. *See* Phillips, 515 F.3d at 234-35. As the Supreme Court instructed in Iqbal, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'- 'that the pleader is entitled to relief.'" Iqbal, 129 S. Ct. at 1949. This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

Fowler, 578 F.3d at 210-11.

Finally, a court must employ less stringent standards when considering *pro se* pleadings than when judging the work product of an attorney. Haines v. Kerner, 404 U.S. 519, 520 (1972). When presented with a *pro se* complaint, the court should construe the complaint liberally and draw fair inferences from what is not alleged as well as from what is alleged. Dluhos v. Strasberg, 321 F.3d 365, 369 (3d Cir. 2003). In a section 1983 action, the court must "apply the applicable law, irrespective of whether the *pro se* litigant has mentioned it by name." Higgins v. Beyer, 293 F.3d 683, 688 (3d Cir. 2002) (quoting Holley v. Dep't of Veteran Affairs, 165 F.3d

244, 247-48 (3d Cir. 1999)). Notwithstanding this liberality, *pro se* litigants are not relieved of their obligation to allege sufficient facts to support a cognizable legal claim. See, *e.g.*, Taylor v. Books A Million, Inc., 296 F.3d 376, 378 (5th Cir. 2002); Riddle v. Mondragon, 83 F.3d 1197, 2102 (10th Cir. 1996).

### III. Analysis

#### A. Denial of Access to the Courts

As explicated in this Court's prior Opinion, the right of access to the courts is satisfied when corrections officials facilitate "meaningful" access for those incarcerated, either through legal materials or the assistance of those trained in the law. See Bounds v. Smith, 430 U.S. 817, 827 (1977). The Supreme Court provided further definition and guidance regarding the scope and nature of this right of access to the courts in Lewis v. Casey, 518 U.S. 343, 351-52 (1996) ("Because Bounds did not create an abstract, freestanding right to a law library or legal assistance, an inmate cannot establish relevant actual injury simply by establishing that his prison's . . . legal assistance program is subpar in some theoretical sense . . . . [He] must go one step further and demonstrate that the alleged shortcomings in the . . . legal assistance program hindered his efforts to pursue a legal claim.").

Thus, following Lewis, access-to-court claims by prisoners require some proof of an actual, concrete injury, in the form of direct prejudice to the plaintiff in the pursuit of some legal claim. See, *e.g.*, Oliver v. Fauver, 118 F.3d 175 (3d Cir. 1997). And, consistent with the Supreme Court's express view that "'we encourage local experimentation' in various methods of assuring access to the courts," Lewis, 518 U.S. at 352, public officials have significant discretion in the field and can provide meaningful access to the courts through a wide variety of means. See, *e.g.*, Peterkin v. Jeffes, 855 F.2d 1021, 1042 (3d Cir. 1988).

Plaintiff, despite numerous opportunities to amend his Complaint, has alleged no actual injury, and indeed subsequently omitted in its entirety and abandoned this claim. See discussion *supra*. It will therefore be formally dismissed.

**B. Inability to Hear/Read the Pod Television and ADA Claim**

Plaintiff alleges that he was discriminated against because of his hearing impairment, initially asserting that he could not hear the pod TV and that Defendants refused, despite repeated requests, to turn the volume up to a level where he could hear it. Subsequent to this Court's August, 2013 Memorandum Opinion outlining the specific requirements to state a claim under the ADA, Plaintiff incorporated additional factual assertions in both his Brief in Opposition to the Motion to Dismiss (ECF No. 64) and Fourth Amendment Complaint that, under the applicable standards, now meet these requirements.[4]

Under Title II of the ADA "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. To show a violation of Title II, a plaintiff must prove that (1) he is a "qualified individual with a disability"; (2) he is being excluded from participation in or being denied the benefits of some "services, programs, or activities," by reason of his disability; and (3) the entity which provides the service, program or activity is a public entity. See, *e.g.*, Adelman v. Dunmire, 1997 WL 164240 (E.D. Pa. Mar. 27, 1997), *aff'd*, 149 F.3d 1163 (3d Cir. 1998).

    1. <u>Qualified Individual with a Substantial Limitation to a Major Life Activity</u>

---

[4] The Court notes that the factual arguments advanced in Defendants' Supplemental Brief in Support are more appropriate to a Motion for Summary Judgment.

First, rather than merely asserting that he is hearing impaired, Plaintiff has now adequately alleged that he is a "qualified individual" with "a physical or mental impairment that substantially limits one or more major life activities."  42 U.S.C. § 12102(1); 29 U.S.C. § 705(20)(B).  See, *e.g.*, Kania v. Potter, 358 Fed. Appx. 338, 342 (3d Cir. 2009) ("A major life activity is one of central importance such as caring for oneself, performing manual tasks, walking, seeing, *hearing*, speaking, breathing, learning and working, as well as sitting [and] standing.") (emphasis added); 29 C.F.R. § 1630.2(i); Toyota Motor Mfg., Ky., Inc. v. Williams, 534 U.S. 184, 195-96, (2002) ("'Substantially limit [ed]'" has been defined as the inability 'to perform a major life activity that the average person in the general population can perform or significantly restricted as to the condition, manner or duration under which the average person in the general population can perform that same major life activity.'") (quoting 29 C.F.R. § 1630.2(j) (2001)).  See also, Pallatto v. Westmorland County Children's Bureau, 2014 WL 836123 (W.D. Pa.  2014).

More specifically, Plaintiff now specifically alleges degrees of hearing impairment in both ears, and the related use of medical devices/medical treatment.  See Fourth Amended Complaint at 2-3 (asserting that Plaintiff has lost 70-75% of his hearing in his right ear in which he now wears a hearing aid, and "is hard of hearing" in his left ear in which he now wears a hearing amplifier, but that he was never evaluated or treated by an audiologist during the period of confinement - in the Mental Health Unit of the Allegheny County Jail - at issue, *i.e.* November 2011 through July, 2012 and so had no remedial devices at that time).  He alleges that Defendants were aware of his hearing impairments, and that he was repeatedly excluded from watching television by every means available, *i.e.* that Defendants not only refused to turn the volume up on the television but also refused to turn on the closed captioning.  See discussion in

8

this Court's August, 2013 Memorandum Opinion at *12-14; see also Fourth Amended Complaint at 1-3.

    2. Excluded from Participation in a Service

Second, Defendants' assertions to the contrary notwithstanding, it appears clear to this Court that, under the relevant case law of the Court of Appeals for the Third Circuit, the pod television must be considered a "service" within the scope of the ADA.

The ADA, as a remedial statute, must be broadly construed to effectuate its purpose. Consistent with this construction, most courts have given a broad reading to the term "service". And the Department of Justice's ("DOJ") regulations, to which the Court must give considerable weight provide that the ADA's coverage extends to "all services . . . made available by public entities." 28 C.F.R. § 35.102(a) (1999). The Third Circuit has held that "this broad language is intended to 'apply to *anything* a public entity does.'" Yeskey v. Pennsylvania Dep't of Corrections, 118 F.3d 168, 171 (3d Cir. 1997) (quoting 28 C.F.R. pt. 35, app. A. subpt. A (emphasis added)); see also, *e.g.*, Oconomowoc Residential Programs v. City of Milwaukee, 300 F.3d 775, 782 (7th Cir.2002). And as the Supreme Court explains, "[m]odern prisons provide inmates with many recreational 'activities,' medical 'services,' and educational and vocational 'programs,' all of which at least theoretically 'benefit' the prisoners (and any of which disabled prisoners could be "excluded from participation in")." Pennsylvania Dep't of Corr. v. Yeskey, 524 U.S. 206, 210 (1998).

Most importantly, the Third Circuit's decision in Chisolm v. McManimon, 275 F.3d 315, 330 (3d Cir. 2001) directs this Court's assessment of this factor. Defendants focus on Chisolm in their Brief in Support, explaining that "the Third Circuit reversed a grant of summary judgment [of an ADA claim] in favor of the defendant, finding that the lower court's conclusion that a

prison has no obligation to activate closed-captions on a prison television for a deaf inmate "*absent a specific request*" is an improper basis for summary judgment when there are genuine issues of material fact regarding the inmate's capacity to request a reasonable accommodation." Brief in Support at 5 (emphasis in original). Defendants' critical omission, however, is that *absent the Circuit Court's implicit assumption that prison television access is within the ADA*, there would have been no "material fact" issues regarding the deaf plaintiff's ability to make the requisite accommodative request. Plaintiff's possible inability to request an accommodation which would *not* give rise to a right under the ADA would have been irrelevant.[5]

   3. By a Public Entity

Third, and last, State prisons are considered public entities under the ADA. Pennsylvania Department of Corrections v. Yeskey, 524 U.S. 206, 210 (1998) (citing 42 U.S.C. § 12131(1)(B)). Plaintiff has now named Allegheny County as a defendant, and, prior thereto this Court had noted that the real party in interest in his *pro se* official capacity suit was the government entity. See, *e.g.*, Henrietta D. v. Bloomberg, 331 F.3d 261, 289 (2d Cir.2003) (citing Hafer v. Melo, 502 U.S. 21, 25 (1991)).

For these reasons, Defendant's Motion to Dismiss Plaintiff's ADA claim must be denied. Cf. Irby v. Sumnicht, 2009 WL 803307, *3 (W.D.Wis. 2009) (observing in its holding that: (1) Courts uniformly recognize "hearing" as a major life activity; (2) for the purpose of screening, it was reasonable to infer that plaintiff was "substantially limited" in his ability to hear; (3)

---

[5] See also Clarkson v. Coughlin, 898 F. Supp. 1019, 1045-47 (S.D. N.Y. 1995) (finding that, pursuant to the ADA, a prison must provide hearing-impaired prisoners with adequate communication devices for telephones and televisions); Irby v. Sumnicht, 2009 WL 803307, *3, *infra (*finding that television is a "service" or "activity" within the meaning of § 12132 (citing Chisolm). But see Aswegan v. Bruhl, 113 F.3d 109, 110 (8th Cir.1997) (concluding without explanation that "cable television sought by [a prisoner] is not a public service, program, or activity within the contemplation of the ADA").

television is a "service" or "activity" within the meaning of § 12132 (citing Chisolm v. McManimon, 275 F.3d 315, 330 (3d Cir.2001) as "assuming that prison television was covered by Title II"; and (4) plaintiff had requested a reasonable accommodation (citing 28 C.F.R. § 35.160(b)(1) ("A public entity shall furnish appropriate auxiliary aids and services where necessary to afford an individual with a disability an equal opportunity to participate in, and enjoy the benefits of, a service, program, or activity conducted by a public entity.")).

However, the Court again emphasizes the different standard Plaintiff's claim would be subject to on a Motion for Summary Judgment. See, e.g., Bryant v. Dart, 2013 WL 5818810, *2 (N.D. Ill. 2013) ( "[Under a]12(b)(6) motion to dismiss [plaintiff] need not 'show' that he was denied these activities or present evidence . . . [but] "must plead facts which plausibly (even if improbably) support each element of his claim.") (citing Iqbal, 556 U.S. at 678 ("complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' ")).

## IV. Order

**AND NOW**, this 29th day of September, 2014:

**IT IS HEREBY ORDERED** that the Motion to Dismiss (ECF No. 57) is **GRANTED in part and DENIED in part**.

**IT IS FURTHER ORDERED** that said Motion is (1) granted to the extent it seeks recognition of Plaintiff's effective abandonment of his claim of denial of access to the courts; (2) granted to the extent it seeks dismissal of Defendants Prisoner Cashiers; (3) granted to the extent it seeks dismissal of Plaintiff's request for punitive damages against Defendant Allegheny County; and (4) denied as to Plaintiff's claim under the ADA.

Lisa Pupo Lenihan  
Chief United States Magistrate Judge

cc: John Richard Jae
    KQ-2569
    S.C.I. Forest
    Special Needs Unit
    P.O. Box 945
    Marienville, PA 16239-0945
    *Via U.S. Postal Mail*

    Counsel of Record
    *Via ECF Electronic Mail*